**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

**COURTNEY ELSTON, individually and on behalf
of similarly situated employees,**

    **Plaintiff,**

**vs.**              **CASE NO.:**

**TOP 1 PERCENT COACHING, LLC, a Florida
limited liability company, and JUSTIN T. FOXX,
individually.**

    **Defendants.**

_____/

## COLLECTIVE ACTION COMPLAINT

COMES NOW the Plaintiff, COURTNEY ELSTON, individually and on behalf of similarly situated employees ("Elston"), and hereby sues the Defendants, TOP 1 PERCENT COACHING, LLC, a Florida limited liability company ("Top 1%") and JUSTIN T. FOXX ("Foxx") as follows:

1. Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees. 29 U.S.C. §§ 206, 207. These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees. *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

2. This case implicates Top 1%, a business that sells wealth coaching and consulting services throughout the world.

3.      Foxx is the CEO of Top 1%, and together, Foxx and Top 1% shall be referred to as "Defendants."

4.      Defendants have a long-standing policy of misclassifying their employees as independent contractors.

5.      Defendants required and/or permitted Plaintiff to work as event coordinator for up to and in excess of forty (40) hours per week but refused to compensate her at the applicable wage and overtime rate.

6.      Defendants refused and/or failed to compensate Plaintiff with a wage, failed to pay Plaintiff on a salary basis, and failed to pay Plaintiff for overtime hours they worked for the three years leading up to this Complaint.

7.      In fact, Defendants required Plaintiff to establish a limited liability company and then paid such company, in order to avoid paying overtime wages to Plaintiff, as well as FICA, Medicare and social security taxes on behalf of Elston.

8.      Defendants' conduct violates the FLSA, which requires non-exempt employees, such as Plaintiff, to be compensated for the overtime hours worked at a rate of one and one-half times the regular rate of pay.  *See* 29 U.S.C. § 207(a).

9.      Furthermore, Defendants' practice of failing to pay employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision.  *See* 29 U.S.C. §§ 203, 206.

10.      Plaintiff brings a collective action to recover the unpaid wages owed to her and all other similarly situated employees who are current and former employees for Defendants who worked for Defendants at any time during the three year period before this Complaint is filed in this action, up to the present ("FLSA Members").

11.     These FLSA Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

## SUBJECT MATTER JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

13.     This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

14.     Venue is proper in the Middle District of Florida because a substantial portion of the events forming the basis of this suit occurred in this District as the Defendants' residence and principle place of business are located in this District in Lee County, Florida.

## PARTIES AND PERSONAL JURISDICTION

15.     Elston is an individual residing in Lee County, Florida.

16.     The FLSA Members are all persons who worked for the Defendants during the past three years through a final judgment in this matter, whom Defendants failed to pay a wage and overtime wages, and who filed a consent to join this collective action.

17.     Top 1% is a domestic limited liability company doing business in Florida for the purpose of accumulating monetary profit and has its principle place of business in Lee County, Florida.

18.     Foxx is an individual who is a resident of Lee County, Florida.

## ALLEGATIONS RELEVANT TO COUNTS I AND II FOR FLSA VIOLATIONS

19.     Plaintiff and FSLA Members are employees as defined by the FLSA.

20.     Defendants have utilized contracts and other mechanisms by which to control the manner in which the Plaintiff and FLSA Members perform their duties for the Defendants.

21.     Defendants controlled the time in which Plaintiff and FLSA Members were required to report to work, leave work, take breaks, take sick leave and take vacation leave.

22.     Defendants essentially required Plaintiff and FLSA Members to work regular hours during the weekdays, and further required Plaintiff and FLSA Members to work overtime hours during the weekdays and weekends for the purpose of planning events, coordinating events, responding to emails from Foxx and other employees and staff, responding to questions from customers, respond to text messages and answer phone calls, all after hours and in excess of 40 hours per week.

23.     Defendants controlled the work to be performed by Plaintiff and FLSA Members by assigning to them their responsibilities and the time-frame within which to complete such responsibilities.

24.     Defendants prohibited Plaintiff and FLSA Members from providing services to other organizations.

25.     Defendants controlled and owned the work product of Plaintiff and FLSA Members.

26.     Defendants required Plaintiff and FLSA Members to abide by the policies and procedures established by Defendants.

27.     Defendants controlled and owned all paperwork and files used by Plaintiff and FLSA Members in performing their jobs.

28.     Defendants prohibited Plaintiff and FLSA Members from conducting business with customers of Top 1% outside of business hours and business-related activities.

29. Defendants prohibited Plaintiff and FLSA Members from fraternizing and socializing with customers, even through social media, outside of Top 1% business.

30. Defendants even prohibited Plaintiff and FLSA Members from referring customers to third parties.

31. Plaintiff and FLSA Members were not even permitted to sale products to customers without the express permission of Defendants, and were required to cease all communications with customers once they quit working for Defendants.

32. Plaintiff and FLSA Members provided no independent service or product as Defendants "owned" all customers, students, products, work product, and other services.

33. Defendants prohibited Plaintiff and FLSA Members from disclosing information identified by Defendants to third parties.

34. Defendants required Plaintiff and FLSA Members to use company logos and email addresses when conducting business with students/customers.

35. Defendants controlled the materials the Plaintiff and FLSA Members used to perform their duties.

36. Defendants controlled the time and place wherein the Plaintiff and FLSA Members could provide their services.

37. Defendants owned and controlled the furnishings and equipment Plaintiff and FLSA Members used to perform their duties for Top 1%.

38. Defendants controlled when, where and how the Plaintiff and FLSA Members interacted with the Defendants' students and customers.

39. Defendants required the Plaintiff and FLSA Members to travel to the Defendants' events in other parts of the nation and world.

40.   Defendants required Plaintiff and FLSA Members to answer email, text messages and phone calls after company hours, before company hours and on weekends.

41.   Defendants required the Plaintiff and FLSA Members to market and advertise the Defendants' products and merchandise to Defendants' current students and potential students.

42.   Defendants controlled the services Plaintiff and FLSA Members provided, as well as the fees charged to Defendants' students and customers.

43.   Defendants controlled the manner in which Plaintiff and FLSA Members talked about or otherwise discussed the Defendants, and even penalized them with a $75,000 fee.

44.   Defendants even offered and controlled the appeals process Plaintiff and FLSA Members were to use when terminated from the company.

45.   Plaintiff and FLSA Members were and are an integral part of the Defendants' business, as events provide a substantial part of the revenues for Defendants.

46.   In fact, the current Chief Financial Officer and Chief Operating Officer, and previous Chief Executive Officers were all classified by Defendants as independent contractors as opposed to employees.

47.   Defendants have improperly classified Plaintiff and FLSA Members as independent contractors when they should have classified and paid them as employees.

48.   While Defendants paid separate companies belonging to Plaintiff and FSLA Members on a 1099 basis, they  have failed to pay the Plaintiff and FLSA Members a legal wage and overtime wages as employees, and have failed to properly withhold federal income taxes, and social security and FICA withholdings in violation of 29 U.S.C.§ 201 *et seq*.

49.   Plaintiff and FLSA Members are not exempt employees per Section 13(a)(1) of the FLSA as they have not been paid on a salary basis.

50.     In a FLSA case, the following elements must be met: "(1) [plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

51.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id.* (citing *Brouwer,* 139 F.3d at 819). "We refer to this test as the 'economic reality' test." *Id.* (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." *Id.*

52.     As mentioned above, Defendants controlled all aspects of the services provided by the Plaintiff and FLSA Members.

53.     At all material times, Plaintiff and FLSA Members were individual employees pursuant to 29 USC § 206-207.

54.     At all material times, Defendants have been employers within the meaning of § 3(d) of the FLSA.  29 U.S.C. § 203(d).

55.     Moreover, the Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee."  29 U.S.C. § 203(d).

56.     The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where that individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged

violation.  *See id*.; *Reich v. Circle C. Investments, Inc*., 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 971-72 (5th Cir. 1984).

57.     Foxx is the majority interest holder and CEO for Top 1% and is responsible for the day to day management of Top 1%, including policy-making decisions related to the manner in which to compensate and classify Plaintiff and FLSA Members.

58.     Foxx is involved in the day-to-day business operation of Top 1%.

59.     Foxx has responsibility for the supervision of the Plaintiff and FLSA Members.

60.     Foxx is responsible for decisions related to the compensation or lack thereof paid to Elston and FLSA Members.

61.     Foxx has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.

62.     Foxx controls the nature, pay structure, and employment relationship of the Plaintiff and FLSA Members.

63.     As such, Top 1% and Foxx are the employers of the Plaintiff and FLSA Members within the meaning of § 3(d) of the FLSA, and are jointly and severally liable for all damages.

64.     "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" *Id*. (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)).  "The phase 'engaged in

commerce' is interpreted broadly and liberally." *Id*. (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

65.     At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

66.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because it has had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

67.     Specifically, Defendants' employees have sold wealth coaching and consulting services that have been moved or sold in interstate commerce to Defendants' patrons.

68.     Additionally, Defendants' employees, including the Plaintiff and FLSA Members, have provided services and handled materials that have been moved or produced in interstate commerce and were used in the course of Defendants' business operations.

69.     Defendants advertise on the internet, and through pod casts that are broadcast worldwide, process credit cards from out of state patrons, communicate via mail, email, and telephone with patrons outside of the State of Florida, and sell their merchandise and services across state lines and in other countries.

70.     Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

71.     The Plaintiff and FLSA Members are not exempt from the overtime and minimum wage requirements under the FLSA.

72.     Defendants' decision to treat the Plaintiff and FLSA Members as independent contractors as opposed to employees was willful and not based upon a good faith basis that such

decisions were in compliance with the FLSA, therefore the Plaintiff and FLSA Members are seeking liquidated damages required by the FLSA.

73.     Plaintiff and FLSA Members have retained undersigned counsel to prosecute these claims and seek reimbursement of attorney fees and costs incurred pursuant to the FLSA.

## COUNT I: VIOLATION OF 29 U.S.C. § 206

74.     The Plaintiff and FLSA Members re-allege and re-aver the allegations in paragraphs 1 through 73 as if fully set forth herein.

75.     Defendants failed to compensate Elston and the FLSA Members for work they performed during the last three years in violation of 29 U.S.C. § 206.

76.     The violation by Defendants has resulted in damages to Elston and the FLSA Members.

WHEREFORE, Elston and the FLSA Members seek the following relief:

a.   Designation of this action as a collective action on behalf of the Plaintiff and FLSA Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and their counsel to represent the Collective Action members;

b.   Declaration, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

c.   Overtime compensation for all hours worked over forty in a workweek at the applicable rate of time-and-a-half;

d.   All unpaid wages and overtime compensation due under the FLSA;

e.   All liquidated damages due under the FLSA;

f.   Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

g.   Such other relief to which Plaintiff and Class Members may be entitled, at law or in equity.

## COUNT II: VIOLATION OF 29 U.S.C. § 207

77.   Elston and the FLSA Members re-allege and re-aver the allegations in paragraphs 1 through 73 as if fully set forth herein.

78.   Defendants required Elston and the FLSA Members to work more than forty (40) hours per week during the three years prior to the filing of this Complaint, and did not compensate them at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek as required by 29 U.S. C. § 207.

79.   Such failure to pay overtime wages is a violation of 29 U.S. C. § 207.

80.   The violation by Defendants has resulted in damages to Elston and the FLSA Members.

WHEREFORE, Elston and the FLSA Members seek the following relief:

a.   Designation of this action as a collective action on behalf of the Plaintiff and FLSA Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and their counsel to represent the Collective Action members;

b.  Declaration, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

c.  Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate;

d.  All unpaid wages and overtime compensation due under the FLSA;

e.  All liquidated damages due under the FLSA;

f.  Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

g.  Such other relief to which Plaintiff and Class Members may be entitled, at law or in equity.

## **JURY DEMAND**

Elston and the FLSA Members demand to have a trial by jury on all issues wherein a jury trial is permitted.

*/s/ Jack C. Morgan, III*
Jack C. Morgan III, Esq.
Florida Bar No. 0126527
**Aloia Roland Lubell & Morgan PLLC**
2222 Second Street
Fort Myers, Florida 33901
Telephone:  239-791-7950
Facsimile:  239-791-7951
jmorgan@floridalegalrights.com
kturner@floridalegalrights.com

- and -

John B. Gallagher, Esquire
FL Bar No. 271225
2631 East Oakland Park Boulevard
Suite 201
Fort Lauderdale, Florida 33306
Tel: 954.524.1888
Fax: 954.524.1887
gal2701@aol.com